**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DARLENE M.,**[1] | ) | |
| | ) | **No. 19 CV 6389** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,**[2] | ) | |
| | ) | **August 25, 2021** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION and ORDER

Darlene M. seeks disability insurance benefits ("DIB"), based on her claim that her anxiety, depression, PTSD, insomnia, and related symptoms render her unable to sustain full-time work. Before the court are the parties' cross motions for summary judgment. For the following reasons, Darlene's motion is granted, the government's is denied, and the matter is remanded:

### Procedural History

Darlene filed her DIB application in October 2016 alleging a disability onset date of May 1, 2015. (Administrative Record ("A.R.") 15, 154.) After her application was denied initially and upon reconsideration, (id. at 81, 89), Darlene sought and received a hearing before an administrative law judge ("ALJ"), (id. at 94, 112). A

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

[2] Kilolo Kijakazi is currently the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), she is automatically substituted as Defendant in this case.

hearing took place in September 2018 at which Darlene and a vocational expert ("VE") provided testimony. (Id. at 34-61.) Thereafter, the ALJ issued a decision in October 2018 concluding that Darlene was not disabled. (Id. at 12-33.) When the Appeals Council denied Darlene's request for review, (id. at 1-6), the ALJ's denial of benefits became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Darlene timely filed this lawsuit seeking judicial review of the Commissioner's final decision and the parties consented to this court's jurisdiction, see 28 U.S.C. § 636(c); (R. 6).

**The ALJ's Decision**

The ALJ followed the required five-step process in evaluating Darlene's disability claim. *See* 20 C.F.R. § 404.5120(a). At step one the ALJ found that Darlene had not engaged in substantial gainful activity since her alleged disability onset date. (A.R. 17.) At step two the ALJ concluded that Darlene suffers from the following severe impairments: history of mitral valve prolapse, hypothyroidism secondary to Hashimoto's thyroiditis, mood disorder, anxiety, and PTSD. (Id. at 18.) At step three the ALJ determined that Darlene's impairments do not meet or medically equal any listed impairment. (Id.) However, the ALJ found that Darlene's mental impairments cause moderate limitations in concentrating, persisting, or maintaining pace (collectively, "CPP"), as well as mild limitations in

the other broad areas of functioning considered by the "paragraph-B criteria."[3] (Id. at 22); *see also* 20 C.F.R. § 404.1520a.

Before turning to step four, the ALJ determined that Darlene has the residual functional capacity ("RFC") to perform "medium work as defined in 20 CFR 404.1567(c) with additional non-exertional limitations." (A.R. 22.) As relevant here, the ALJ assessed Darlene's mental RFC as limited to work requiring the performance of "no more than simple and routine tasks," which she can perform "at a variable pace." (Id.) The ALJ further found that Darlene "is precluded from work that requires hourly or other periodic production quotas, but can perform work [that] has end-of-day production quotas." (Id.) The ALJ assessed additional physical limitations that are not at issue on appeal.

In assessing her mental RFC, the ALJ found Darlene's testimony "not persuasive with respect to the severity of symptoms and the functional limitations imposed on her by those symptoms." (Id. at 24.) The ALJ gave "no weight" to opinion evidence provided by medical consultant Dr. James Madison or psychological consultants Drs. David Voss and M. W. DiFonso. (Id. at 26.) Although these consultants opined that Darlene had no severe medically determinable impairments, the ALJ found otherwise, concluding that she has at least one severe impairment. (Id.) The ALJ also gave "no weight" to statements submitted by Darlene's primary care physician, Dr. Matthew Hummel, because

[3] The remaining categories are: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3).

those statements were intended only to give Darlene authority to travel with her dog, not to indicate that she needed her dog with her in the workplace. (Id.) The ALJ gave "some weight" to a function report that Darlene's friend prepared, explaining how anxiety interfered with Darlene's functioning, but only to the extent her observations in the report were consistent with the objective medical evidence. (Id.) The ALJ did not discuss how any observations in the function report were inconsistent with the evidence. (Id.) He gave the report "no weight" as to the issue of disability because there was no indication the friend was professionally qualified to discuss the Social Security Administration's disability determination process. (Id.) The ALJ then found at step four that Darlene is unable to perform any past relevant work, but at step five, the ALJ concluded that a significant number of jobs exist in the national economy that Darlene can perform. (Id. at 27-28.)

**Analysis**

Darlene argues that the ALJ erred in evaluating her subjective symptoms and in assessing her mental RFC. (R. 13, Pl.'s Br. at 1.) In reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ, allowing

reversal "only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).

### A. Symptom Assessment

Darlene contends that the ALJ erred in evaluating her subjective symptom allegations. An ALJ's symptom evaluation is entitled to great deference because of the ALJ's ability to observe firsthand the believability of the claimant's symptom descriptions. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a reviewing court may reverse a symptom assessment only where it is "patently wrong." *Id.* at 816. The ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of the claimant's symptoms, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815. However, an ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

Darlene argues that the ALJ applied the wrong standard of review when evaluating her statements. (R. 13, Pl.'s Br. at 4-5.) The ALJ used oft-criticized boilerplate language finding that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely

consistent with the medical evidence and other evidence in the record." (A.R. 24.) Darlene asserts that such language implies the ALJ used an evidentiary standard more rigorous than a preponderance of the evidence, thereby necessitating remand. The government correctly responds that courts have rejected such an argument where the ALJ appropriately determined whether the objective medical evidence and other evidence substantiated the symptom statements. (R. 22, Govt.'s Mem. at 5-6 (collecting cases)); *see also Harris v. Saul*, 835 Fed. Appx. 881, 886 (7th Cir. 2020). Here the ALJ provided sufficient explanation based on the record, (A.R. 24-25), to convince the court that inclusion of the "not entirely consistent" boilerplate does not require remand, *see Ronald B. v. Saul*, No. 18 CV 5881, 2019 WL 3778070, at *5 (N.D. Ill. Aug. 12, 2019).

Darlene next contends that the ALJ failed to use the required regulatory factors to guide his evaluation of her subjective symptoms. (R. 13, Pl.'s Br. at 9-10 (citing SSR 16-3p, 2017 WL 5180304, at *7-8; 20 C.F.R. § 404.1529).) The government responds that the ALJ sufficiently considered Darlene's daily activities and medications to "minimally articulate" his reasoning as required by the substantial evidence standard. (R. 22, Govt.'s Mem. at 9-11); *see also Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The ALJ summarized Darlene's testimony regarding when she normally wakes up, how frequently she cooks, her struggles to keep up with household chores and her hobbies, and her television-viewing habits, but discounted the same without analysis. (R. 22, Govt.'s Mem. at 9; A.R. 23-24). Likewise, the ALJ noted Darlene's testimony regarding her

medications at steps two and three, but not in the step-four symptom assessment. (R. 22, Govt.'s Mem. at 10; A.R. 18, 20-21, 24.) Instead, the ALJ's analysis of Darlene's subjective symptoms focused on evidence loosely relating to her daily activities, including her ability to keep weekly counseling appointments, maintain good personal grooming and hygiene, move from Arizona to Illinois, keep fuel in her car, open mail and pay bills, and care for her dog. (Id. at 24-25.)

The ALJ's heavy reliance on a summary of evidence and a set of infrequent activities to evaluate Darlene's statement of symptoms gives this court some pause. Courts have expressed skepticism regarding whether summarizing evidence demonstrates the ALJ properly considered it. *See Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("[T]he act of summarizing the evidence is not the equivalent of providing an analysis of the evidence."). Furthermore, the Seventh Circuit has cautioned against over-emphasizing infrequent activities that do not reflect full-time work, *see, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), although such analysis is permissible to the extent it describes how Darlene's activities are inconsistent with her allegations of limitations, *see Minger v. Berryhill*, 307 F. Supp. 3d 865, 872 (N.D. Ill. 2018). Viewing the ALJ's decision as a whole, as this court must, the court cannot say such concerns alone render the symptom assessment "patently wrong." The ALJ's decision runs into problems, however, by failing to address evidence that corroborates Darlene's statements regarding her subjective symptoms.

The ALJ noted Darlene's statements regarding her struggles with cooking, cleaning, and hobbies but found her statements "not persuasive." (See A.R. 23-24.) At the same time the ALJ granted "some weight" to the function report completed by Darlene's friend, (id. at 26), which corroborates Darlene's symptom statements, (see id. at 190 (prior to her condition Darlene could get out of the house and complete projects, but now on bad days she mostly stays in bed and "just does the basics of caring for the dog"), 191 (Darlene is less interested in cooking than she was before, mostly eats packaged food or takeout, only does cleaning or laundry when she feels up for it, and needs encouragement from her friend to do these chores), 192 (Darlene only shops when she feels up to it), 193 (Darlene used to be interested in crafts but now watches television all the time), 194 (Darlene has trouble following written and spoken instructions)). The ALJ never discussed this corroborating evidence. While an ALJ need not consider every piece of evidence, *see Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013), he cannot ignore an entire line of evidence, *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) ("The ALJ may not select and discuss only that evidence that favors [his] ultimate conclusion, but must confront the evidence that does not support [his] conclusion and explain why it was rejected."). Here the ALJ impermissibly created the appearance that he "perused the record and pulled out a few things [Darlene] was able to do, even if they were minor activities, to cut against [her] reported severe lack of motivation and problems focusing." (R. 23, Pl.'s Reply Br. at 6.) By not confronting the

evidence that did not support his adverse symptom assessment, the ALJ failed to support the symptom assessment with substantial evidence.

Compounding this error, the ALJ made no attempt to analyze the remaining regulatory factors. (A.R. 23, 27.) While the government correctly notes that exhaustive articulation of factors is not required, *see, e.g.*, *Pepper*, 712 F.3d at 362, the ALJ must do more than merely cite the factors, *see Bonnie F. v. Saul*, No. 18 CV 50417, 2020 WL 3414948, at *5 n.5 (N.D. Ill. June 22, 2020) (citing *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)). One of those factors is treatment. The ALJ was clearly mindful that treatment was "pertinent to the evidence of record," SSR 16-3p, 2017 WL 5180304, at *8, because he cited Darlene's appointments with her counselor as evidence of her ability to keep appointments while staying properly groomed. But the ALJ never discussed whether Darlene's history of seeking treatment for her mental health issues corroborated her symptom allegations. *See id.* at *9 ("Persistent attempts to obtain relief of symptoms . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.").

Similarly, the ALJ included no discussion of "[f]actors that precipitate and aggravate [Darlene's] symptoms." *Id.* at *7. Once again, the ALJ was mindful that stressors could trigger Darlene's anxiety symptoms, because he said as much when justifying his RFC assessment. (A.R. 26 ("[W]ork-related stress . . . could cause increased anxiety").) Despite this, the ALJ never considered evidence regarding Darlene's stress triggers or how that evidence relates to her subjective symptom

statements. (See id. at 193-95 (social interactions and stress increase Darlene's anxiety), 397 (Darlene felt very angry and sad after friend was unable to help her move from Arizona), 423 (describing Darlene as having depression and anxiety during stressful time following the deaths of her mother and friend).) Likewise, the ALJ never discussed the side effects of Darlene's medications, (see id. at 427 (Darlene's symptoms "are improved with medication but she continues to feel depressed and anxious"), or other steps she took to avoid symptoms—such as avoiding social interactions, (see id. at 193-94 (friends' lack of understanding increases Darlene's anxiety, resulting in her hardly ever attending events), 403-07 (counselor's notes describing Darlene's need to "[c]ontinue working on relationships")).

Finally, the ALJ never considered Darlene's good work record. (See id. at 41 (Darlene's testimony regarding the substantial accounting and administrative responsibilities in her previous job).) "[A] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). Although an ALJ's silence regarding work history "is not enough to negate . . . substantial evidence supporting the adverse credibility finding," *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016), failure to consider a good work record can further bolster the need for remand where the ALJ has otherwise failed to provide substantial evidence to support his symptom assessment, *see Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir.

2016). The ALJ should have either considered Darlene's work history or properly used the regulatory factors to support his adverse symptom assessment.

This is not to say that the ALJ must credit all of Darlene's subjective symptoms on remand—only that he must properly apply the regulatory factors in conducting his symptom assessment. Indeed, the ALJ may ultimately reach the same conclusions. But the ALJ's error here is not harmless. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Bonnie F.*, 2020 WL 3414948, at *5 (collecting cases). Neither condition is met here, and the court cannot say whether the ALJ "would have reached the same conclusion about [Darlene]'s disability status if [he] had properly conducted the symptom[] evaluation." *Id.* Because the ALJ failed to "adequately explain" his symptom assessment, substantial evidence does not support his decision and remand is warranted. *See Minnick*, 775 F.3d at 937.

**B. RFC Assessment**

Darlene also argues that the ALJ failed to support his RFC assessment with substantial evidence because he created an evidentiary deficit by rejecting all opinion evidence and failed to adequately account for her moderate CPP limitations. The government does not respond directly to the evidentiary deficit argument, noting only in a footnote the general standards governing review of an ALJ's narrative discussion requirements under SSR 96-8p. (R. 22, Govt.'s Mem. at 12 n.3); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The court agrees

with Darlene that the ALJ improperly created an evidentiary deficit requiring remand. Under SSR 96-8p, the ALJ must include in his RFC assessment a narrative discussion explaining how the evidence supports each conclusion, with citations to specific facts in the record. *Id*. The Seventh Circuit applies a forgiving standard of review in accordance with the low hurdle imposed by the substantial evidence rule. *See Bruno v. Saul*, 817 Fed. Appx. 238, 241 (7th Cir. 2020) (finding that the ALJ must only build "an 'accurate and logical bridge' from the evidence to the conclusion"); *Murphy v. Colvin*, 759 F.3d 811, 817-18 (7th Cir. 2014) ("[A] determination need not contain a complete written evaluation of every piece of evidence."). However, the Seventh Circuit has described circumstances in which an ALJ provides so little basis in the record that he fails to support his RFC assessment with substantial evidence. One such circumstance is when the ALJ "succumb[s] to the temptation to play doctor." *Deborah M.*, 994 F.3d at 790.

In *Suide v. Astrue*, 371 Fed. Appx. 684 (7th Cir. 2010), the Seventh Circuit considered how the prohibition on "playing doctor" applies to circumstances in which the ALJ uses "[his] own lay opinions to fill evidentiary gaps in the record." *Id.* at 690. Such evidentiary gaps can occur when "an ALJ rejects each record opinion indicating functional limitations." *Monique B. v. Saul*, No. 19 CV 652, 2020 WL 4208112, at *8 (N.D. Ill. July 22, 2020). The *Suide* court held that when the rest of the record cannot fill the "evidentiary deficit" left by the ALJ's rejection of the opinion evidence, the RFC assessment is not supported by substantial evidence and remand is required. *Suide*, 371 Fed. Appx. at 690. Although the absence of

expert opinion evidence does not prevent the ALJ from reaching conclusions regarding the claimant's ability to work, "an ALJ cannot reject all the relevant medical RFC opinions and then construct a 'middle ground' and come up with [his] own . . . RFC assessment without logically connecting the evidence to the RFC findings." *Mark J. v. Saul*, No. 18 CV 8479, 2020 WL 374676, at *5 (N.D. Ill. Jan. 23, 2020) (internal quotation marks omitted).

The RFC assessment of Darlene's mental limitations suffers from the type of evidentiary deficit discussed in *Suide*. Here the ALJ rejected the medical opinions of state agency consultants Drs. Madison, Voss, and DiFonso, as well as the statements of Darlene's primary care physician Dr. Hummel. (A.R. 26.) After assigning no weight to the opinion evidence of record, the ALJ was required to "explain how he made his RFC determination with specific citations to the record that show he considered the relevant medical and non-medical evidence." *Alexander v. Astrue*, No. 09 CV 3406, 2010 WL 3199356, at *11 (N.D. Ill. Aug. 10, 2010). Although the ALJ considered evidence of Darlene's struggles with concentration, excessive worrying, and preoccupation when finding that "it was reasonable to limit her to work that required performing no more than simple and routine tasks," (A.R. 25), he offered no explanation for the remainder of his mental RFC assessment. (Id. at 26.) Without any discussion or citation to the record, the ALJ found Darlene "able to perform these tasks at a variable pace" and to "perform work that has end-of-day production quotas."

The ALJ's decision lacks sufficient explanation. SSR 96-8p requires ALJs to offer some record-based explanation supporting "each conclusion" made in the RFC, 1996 WL 374184, at *7, and the Seventh Circuit requires ALJs to articulate specific conclusions when the ALJ finds a claimant has moderate CPP limitations, *see Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[T]he ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (finding that the RFC properly accounted for the plaintiff's moderate CPP limitations when it individually discussed and assessed CPP restrictions). Without providing citations to indicate otherwise, the ALJ appears to have crafted his own mental RFC by formulating a "middle ground" conclusion that did not connect the RFC regarding pace and persistence to the evidence in the record—precisely the kind of formulation courts have rejected.

Furthermore, this is not a case in which the record contains obvious support that the ALJ merely neglected to cite. *See Matthew G. T. v. Saul*, No. 19 CV 1486, 2020 WL 6940981, at *3 (N.D. Ill. Nov. 25, 2020) (finding no evidentiary deficit where "it is readily apparent that the RFC is based on the VE's description of the vocational requirements attributable to [p]laintiff's job as a night cleaner"). Nothing in the record readily suggests Darlene's ability to perform tasks at a variable pace or meet end-of-day production quotas. Some evidence the ALJ did not discuss suggests just the opposite. (See A.R. 190-91 (function report describing Darlene's inability on bad days to do more than stay in bed and accomplish "the

basics" of caring for her dog, her difficulties completing projects, and her need for lots of encouragement to complete chores such as cleaning or the laundry), 409-10 (initial evaluation by counselor describing Darlene's symptoms as including easy distraction and noting her unemployment as "unable to work due to depression[,] anxiety, and functioning).) While the ALJ need not give decisive weight to such countervailing evidence, he must offer some explanation of how the record supports his conclusions. *See* SSR 96-8p, 1996 WL 374184, at *7; *Mark J.*, 2020 WL 374676, at *5. Here the ALJ failed to provide even a cursory explanation for important findings in his RFC assessment, and as such it lacks the weight of substantial evidence. *See Suide*, 371 Fed. Appx. at 690.

The government argues that even if the ALJ erred in assessing Darlene's RFC, such error is harmless. For support the government points to a recent line of cases finding harmless error in the RFC assessment if the claimant fails to identify any additional limitations supported by the record beyond that already reflected in the RFC. (R. 22, Govt.'s Mem. at 13 (collecting cases)); *see, e.g.*, *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). As an initial matter, it is not clear this precedent applies where, as here, the ALJ's failure to explain his RFC assessment makes it difficult to discern which of Darlene's CPP impairments the RFC already reflects. Regardless, Darlene argues for stricter pace and persistence limitations than those assessed by the ALJ by pointing to a variety of evidence in the record that could favor such restrictions. (See R. 13, Pl.'s Br. at 14 (citing evidence regarding Darlene's symptoms, including significant stress, feeling overwhelmed, crying

spells, difficulty sleeping at night, hypersomnia, and fatigue during the day).) Darlene's argument for stricter pace and persistence limitations based on evidence in the record is enough for her to successfully evade the harmless error rule. *See Jeremy S. v. Saul*, No. 19 CV 2837, 2021 WL 1209130, at *5 (N.D. Ill. March 31, 2021).

The government argues that the record lacks evidence to support limitations beyond those assessed by the ALJ, and that remanding "on such a weak record would set perverse incentives by rewarding [Darlene's] failure to present evidence (including opinion evidence by her doctors) that supported greater functional limitations than the ALJ assessed." (R. 22, Govt.'s Mem. at 14-15.) The government presents a compelling narrative. But the ALJ did not present this interpretation of the record, and it appears to contradict his step two and three findings regarding Darlene's medically determinable impairments. (Compare id. (arguing that Darlene "was rarely documented as having concentration problems" and suggesting her "reports" of anxiety were not trustworthy) with A.R. 18 (finding Darlene suffers from "mood disorder, generalized anxiety disorder, and [PTSD]"), 22 (assessing Darlene's mental impairments as imposing "moderate [CPP] limitations").) This court can neither reweigh the evidence, *see Berger*, 516 F.3d at 544, nor uphold the ALJ's decision "on a basis not articulated in [his] order." *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) (citing *Sec. & Exch. Comm'n v.*

*Chenery Corp.*, 332 U.S. 194 (1947)). If the ALJ assessed Darlene's RFC based on the reasons given by the government, it is his obligation to say so.[4]

**Conclusion**

For the foregoing reasons, Darlene's motion is granted, the government's motion is denied, and the case is remanded for further proceedings consistent with this opinion.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**

[4] Because the evidentiary deficit issue justifies remand and further administrative proceedings may result in a modified RFC assessment, the court does not consider Darlene's other arguments regarding the sufficiency of the RFC.